Paper No. 22
RFC

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Hydron Technologies, Inc.
_____

Serial No. 74/617,867
_____

J. Rodman Steele, Jr. of Quarles & Brady LLP for Hydron
Technologies, Inc.

Cheryl A. Butler, Trademark Examining Attorney, Law Office
107 (Thomas Lamone, Managing Attorney).
_____

Before Simms, Cissel and Hohein, Administrative Trademark
Judges.

Opinion by Cissel, Administrative Trademark Judge:

On January 4, 1995, applicant filed the above-identified application to register the mark "HYDRON MAKES THE DIFFERENCE" on the Principal Register for what were subsequently identified by amendment as "facial, skincare, hair, bath, and beauty preparations; namely, moisturizers, cremes, toners, clarifiers, exfoliators, masques, lotions, sunscreens, sunless tanning cremes and non-medicated hair care preparations," in International Class 3.

The application was based on applicant's assertion that it possessed a bona fide intention to use the mark on such products in commerce, and on August 27, 1996, applicant filed an amendment to allege use and a supporting declaration. Applicant asserted first use of the mark on the stated goods in interstate commerce at least as early as August 13, 1995, and submitted three "screen prints from an infomercial… showing the mark as used in point of sale advertisements." The "screen prints" are, in essence, copies of individual images taken from a video recording of the infomercial, which is an extended television commercial for applicant's skin care products.

The Examining Attorney held the specimens to be unacceptable as evidence of trademark use because they do not show use of the mark on the goods. She dismissed applicant's contention that the images from applicant's infomercial are proper evidence of trademark use of the mark sought to be registered, characterizing them as merely advertising, rather than evidence of use of the mark on the goods or in some other way showing the mark used to indicate the source of the goods. The Examining Attorney required substitute specimens showing trademark use of the matter sought to be registered.

Applicant responded with argument on this issue, but the Examining Attorney was not persuaded, and in an Office Action issued on April 2, 1997, she made final the refusal of registration under Sections 1, 2 and 45 of the Lanham Act, (15 USC 1051, 1052 and 1127), on the ground that the specimens do not show use of the mark as a trademark for the goods specified in the application. Section 1 provides for the registration of trademarks used in commerce and requires submission of specimens of such use of the mark with the application. Section 2 also requires the matter sought to be registered to be a trademark, and Section 45 defines a trademark and what constitutes use of it in commerce.

Applicant filed a timely Notice of Appeal, along with a request for reconsideration, on October 2, 1997. The appeal was instituted, but action on it was suspended, and the application was remanded to the Examining Attorney for reconsideration.

Included with the reconsideration request were a video cassette of the complete infomercial, additional screen prints from the video of the infomercial, and a time-indexed guide to viewing it.

The Examining Attorney was not persuaded, however, and continued the refusal to register the mark "HYDRON MAKES

3

THE DIFFERENCE" in the absence of what she could accept as specimens showing trademark use of the words sought to be registered. Then the file was returned to the Board for resumption of the appeal.

Applicant filed a brief, the Examining Attorney filed her brief, and applicant filed a reply brief. Applicant requested an oral hearing before the Board, but subsequently withdrew the request, so we have resolved this matter on the written record and arguments.

The sole issue before us on appeal is whether the specimens submitted with the amendment to allege use are acceptable evidence of the use of "HYDRON MAKES THE DIFFERENCE" as a trademark for the beauty products set forth in the application. Based on careful consideration of the record before us, we find that the specimens are acceptable evidence of trademark use of these words, so the refusal to register (or, in the terms the Examining Attorney originally used, the requirement for acceptable specimens evidencing trademark use) is inappropriate, and therefore must be reversed.

A detailed explanation of exactly what is shown in the half hour infomercial is necessary in order to understand the factual context in which this issue is presented. The infomercial is shown on QVC, a cable television channel

devoted to shopping.  Programming on this channel consists of advertising various products and offering to send them to viewers who call and order them by telephone.  A subscriber to QVC may watch applicant's infomercial and order applicant's "HYDRON" skin and hair care products by calling the telephone number shown in the infomercial, or by sending a check or money order to an address shown therein.  The products ordered are then mailed to the person who ordered them.

The entire video presentation is twenty-eight minutes and forty-eight seconds long.  The sales presentation begins with the primary spokesperson, a woman, holding a baby in her lap and extolling the virtues of the infant's skin.  After about ten and a half minutes of personal endorsements, interviews, demonstrations, and information concerning the history and development of the products, the patents for the technology used in making them, and the successful marketing role of QVC, the mark is is shown for the first time.  The mark, depicted on two lines, with "HYDRON" on one, and "Makes The Difference™" on the line immediately below, is shown for three seconds on an otherwise dark screen.  In general, music and narrative accompany the images throughout the video, but no narrative is used during the times when the mark appears on the

screen. Directly following the presentation of the mark itself, the screen is split, with the left half showing a woman, and the right half displaying a picture of bottles and tubes of applicant's products bearing the mark "HYDRON." Two minutes and five seconds later, at the 12:34 mark, after more information and touting of the products has been presented, a screen appears showing the price and how to order and pay for the goods by writing or calling.

The second time the mark appears in the infomercial is at the 19:34 mark. The slogan "HYDRON Makes The Difference™" is shown on two lines again, this time on top of a blue circle which appears on an otherwise solid black background. The mark again is shown for three seconds, and then, immediately following this, the split screen featuring both a picture of the "HYDRON" products and the image of the woman appears. More promotional information is then provided, and after two minutes and fourteen seconds of that, the screen showing the price and how to order are shown again.

The third and final time the mark is shown is at the end of the infomercial. At 27:58, the ordering information screen is again displayed. The image of bottles and tubes of applicant's products and the directions for ordering them is held through 28:09. At 28:39, the screen is split,

featuring a woman's face on one side and a picture of

containers of applicant's goods on the other.  Directly

following that, at 28:40, a photograph of a baby appears

for three seconds, with the slogan "HYDRON Makes The

Difference™" again shown in the middle of the screen.

The Examining Attorney contends that

"[t]he rotating displays of the products on the split
screens with the various endorsers and the narrator's
information and promotional comments result in a
piecemeal presentation of the goods and prevents (sic)
a direct association of the proposed mark with the
goods because the viewer's focus is constantly being
subjected to changing stimuli.  Even accepting
applicant's position that there is (sic) 'only 32
seconds' between the display of the mark and the
relevant goods, the material presented in that time is
sufficient to prevent the formulation of an
association in the minds of the consumers." (Examining
Attorney's brief, p. 9).

She argues further that

"[a]pplicant's proposed mark appears for a total of
nine seconds in an infomercial over twenty-eight
minutes in length.  Combined with the overall
promotional nature of the infomercial, the nature of
the changing audio-visual presentation between the
display of the proposed mark and the ordering and
pricing information, and the inability of the
potential purchaser to control the viewing of the
infomercial, applicant's use does not amount to a
display in direct association with the goods.  Rather,
applicant's use falls on the 'advertising' side of the
line."  (brief, p. 15).

Section 1 of the Lanham Act establishes that the owner

of a trademark used in commerce may apply to register it on

the Principal Register by filing a written application and

specimens of the mark as it is used in commerce. Section 45 of the Act provides that a mark shall be considered to be used in commerce on goods when "it is placed in any manner on the goods or their containers <u>or the displays associated therewith</u> … and the goods are sold or transported in commerce …" (emphasis added). In the instant case, the specimens submitted by the applicant with the amendment to allege use are acceptable because they satisfy the requirements for displays associated with the goods.

Whether a specimen is merely advertising or whether it is a display associated with the goods is a question of fact which must be determined in each case based on the evidence in that particular case. In re Shipley Co., 230 USPQ 691 (TTAB 1986). In that case, the applicant displayed the mark at booths at trade shows. The crucial factor was that the mark was being used at the point of sale, i.e., at the location where the goods could be ordered, even though the goods identified by the mark were not present when the order was placed. The Board held that the prominent display of the mark on the booth where the goods could be ordered created the association between the mark and the goods. Likewise, the case of In re Marriott, 459 F.2d 525, 173 USPQ 799 (CCPA 1972), dealt with the

issue of whether menus can constitute displays associated with the food items listed thereon. In that case, the menus designated a sandwich as the "TEEN TWIST" sandwich, listed its ingredients, and presented an illustration of it as well. The Court found that the point-of-sale nature of the display on the menu was significant because the customer who orders the sandwich from the menu associates the mark on the menu with the sandwich he or she receives.

The law with respect to displays associated with the goods was extended by the decision in Lands' End Inc. v. Manbeck, 797 F.Supp. 511, 24 USPQ2d 1314 (E.D. Va. 1994). There the Court found that a mail-order catalog from which the goods could be ordered, and which showed the mark in close proximity to descriptions of the goods, illustrations thereof and prices for them, was an acceptable specimen because it constituted a display associated with the goods. The court noted that "[t]he catalogue is by no means 'mere advertising.' A customer can identify a listing and make a decision to purchase by filling out the sales form and sending it in or by calling in a purchase by phone … The point of sale nature of this display, when combined with the prominent display of the alleged mark with the product, leads this court to conclude that this mark constitutes a display associated with the goods." 24 USPQ at 1316.

The case now before the Board presents an analogous situation.  The mark sought to be registered is shown in the infomercial in close association with pictures of the goods bearing the mark "HYDRON."  As we noted above, the images immediately preceding or immediately following the mark prominently feature pictures of the goods.  The information on how to order the goods is also given within a reasonable time of when the mark and the goods are shown.  The infomercial, like the catalog in Lands' End, supra, is "by no means mere advertising."  Instead, it is a basis upon which a customer can identify the products he or she wants to purchase, make the decision to purchase them, and place the order.  Based on the evidence before us in the instant case showing the use of the mark by this applicant, we have reached the conclusion that the use of the slogan "HYDRON MAKES THE DIFFERENCE" in this infomercial creates an association between the mark and the goods.  The test for constituting a display associated with the goods is therefore satisfied.

The Examining Attorney argues that too much is going on in the infomercial and too much time elapses between the time the mark is shown and the time the information about how to order the goods is provided for a viewer to associate the slogan with applicant's products.  In our

10

view, this is simply not the case. Moreover, the characterization of the time as excessive may be more of a comment on the quality of the production of the infomercial than an argument against finding that the infomercial is an acceptable specimen as a point-of-purchase display associated with the goods.

As applicant points out, the court in the Lands' End case emphasized the proximity between the pictures of the goods in the catalog and the mark used in connection with them. The space or pages between the mark and the illustration of the goods, on the one hand, and the ordering information, on the other, was not discussed, and properly so. The question was whether the catalog, which was used at the point where the customer decided to purchase the goods and ordered them, showed the mark in close proximity to the goods and in such a way that the prospective purchaser would understand the mark as identifying the source of the goods.

The court did not hold it fatal to the acceptability of the catalog as a point-of-purchase display that it showed the ordering information farther away from the depiction of the goods than the mark was shown. In a similar sense, the important fact in the instant case is that the goods are shown either immediately before or

11

immediately after the mark is displayed.  That the ordering information is not shown in direct proximity to when the mark and the goods are shown does not detract from the fact that sequentially depicting the mark and the goods creates an association between the two in the mind of a person watching the video.

When the whole infomercial is considered as a viewer would perceive it, it is clear that the slogan sought to be registered is associated with the goods which are the subject of the entire video.  Customers and potential customers are likely to understand that "HYDRON MAKES THE DIFFERENCE," shown three times during the presentation, each time back-to-back with the photographic representation of the goods, identifies the source of the skin care products which are pictured.

The very end of the presentation makes this abundantly clear.  The ordering information is presented for the last time.  Next, the testimonials conclude on one side of the screen simultaneously with the display of a picture of containers of product bearing the mark "HYDRON" on the other side.  Immediately, the scene returns to the setting with which the infomercial began.  The primary spokesperson is shown again with the same baby in her lap.  The screen is filled with the image of the child and the slogan, as if

12

to summarize the presentation at its conclusion.  The tag line for the whole advertisement is the last thing the viewer sees:  "HYDRON Makes The Difference.™"  From the final scene alone, appearing immediately after a depiction of applicant's "HYDRON" products, it is clear that the slogan "HYDRON MAKES THE DIFFERENCE" identifies the source of the goods.  It is also clear that the infomercial is a point-of-purchase display in the same sense that the catalog in the Lands' End case was.

In keeping with the Court's ruling in the Lands' End case, the requirements of Sections 1 and 45 of the Lanham Act are therefore satisfied in the instant application by the specimens that the applicant submitted with its

amendment to allege use.  Accordingly, the refusal to
register, or the requirement for substitute specimens, is
reversed.


R. L. Simms


R. F. Cissel


G. D. Hohein
Administrative Trademark Judges
Trademark Trial and Appeal Board

14